**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**EMJADIA PORTER,**

                              **Petitioner,**

  v.                                                **9:10-CV-0958**
                                                                  **(TJM)**

**RUSSELL PERDUE,**[1]

                              **Respondent.**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**APPEARANCES:**                                      **OF COUNSEL:**

**FOR THE PETITIONER:**

**EMJADIA PORTER**
Inmate No. 04497-084
Petitioner, *pro se*
F.C.I. Allenwood
Inmate Mail/Parcels
P.O. BOX 1000
White Deer, PA 17887

**FOR THE RESPONDENT:**

**RICHARD S. HARTUNIAN, ESQ.**        **CHARLES E. ROBERTS, ESQ.**
**UNITED STATES ATTORNEY**           **Assistant United States Attorney**
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7198

**THOMAS J. MCAVOY**
**Senior, United States District Judge**

## MEMORANDUM-DECISION AND ORDER

---

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Russell Perdue, who was appointed as warden of the Federal Correctional Institution in Ray Brook, New York in February, 2011, it is automatically substituted as the respondent in this action and the caption of this matter is amended accordingly.

I.     BACKGROUND

   A.     **Related Administrative Proceedings**

   According to the administrative record supplied to this Court, on April 25, 2008, petitioner, *pro se* Emjadia Porter, who at the time was incarcerated at the Federal Correctional Institution ("F.C.I.") in Fort Dix, New Jersey, received an incident report prepared by an officer at that facility.  That report alleged that on April 12, 2008, Porter and another prisoner at that facility, inmate Kelly, "exchanged words ... over a television program."  *See* Incident Report (4/25/08) (Dkt. No. 6-2 at p. 5) ("Incident Report").  Other inmates who were in the room where the television was located then "observed [Porter] picking inmate Kelly up and slamming him onto the floor."  *Id.*  As a result of that incident, inmate Kelly "sustained a superficial laceration above his left eye from his face striking the floor, head first."  *Id.*  Porter was "medically assessed" at the time and did not appear to have "sustained any visible injuries" as a result of the incident.  *Id.*

   On April 29, 2008, Porter received a copy of the Incident Report, as well as a "Notice of Discipline Hearing" form.  Dkt. No. 6-2 at p. 7 ("Discipline Hearing Form").  On that form, Porter indicated that he did not wish to have a member of the Fort Dix staff assist him in preparing Porter's defense to the charges contained in the Incident Report, however Porter noted on the Discipline Hearing Form that he wished to call inmate Kelly – the individual whom Porter was accused of assaulting – as a witness at the disciplinary hearing.  *Id.*  Porter indicated on that form that inmate Kelly would testify that Porter "had nothing to do with [Kelly's] injuries."  *Id.*

   According to the testimony provided to this Court by Anthony C. Boyce, the Hearing Officer who presided over the disciplinary hearing that was conducted as a result of the Incident Report, "institution staff contacted inmate Kelly and asked him to provide a statement regarding

the alleged assault.  Inmate Kelly stated he did not want to discuss the incident and that he was not going to talk." *See* Declaration of Anthony C. Boyce (11/10/10) (Dkt. No. 6-2 at p. 1) ("Boyce Decl.") at ¶ 7.  As a result, inmate Kelly was not called as a witness at Porter's disciplinary hearing.[2]

Porter's disciplinary hearing relating to the Incident Report took place on May 5, 2008.  *See* Dkt. No. 6-2 at pp. 24-27 ("Hearing Officer Report").  Following that proceeding, Hearing Officer Boyce summarized the basis for his finding that Porter was guilty of the conduct charged in the Incident Report.  Specifically, the Hearing Officer noted that, after Porter had been read the allegations contained in the Incident Report, he claimed that he "had no altercation with Kelly and [Porter] was not in the t.v. room." Hearing Officer Report at p. 1.  Porter further noted that he had not had been the subject of any incident reports for a number of years.  *Id.*[3]  However, Hearing Officer Boyce credited the testimony of the employee who investigated the incident over the testimony provided by Porter at the hearing, in part because Porter had "everything to gain and nothing to lose" in denying that he assaulted inmate Kelly.  Hearing Officer Report at p. 2.  The Hearing Officer thereafter concluded that "the greater weight of evidence" demonstrated that Porter was guilty of "a violation of code 224, minor assault on another inmate." *Id.* at p. 3.[4]  He

---

[2] As is discussed more fully *post* at p. 10, the Hearing Officer cited other reasons for his decision to refrain from calling inmate Kelly as a witness at Porter's disciplinary hearing.  *See* Boyce Decl. at ¶¶ 7-9.

[3] Hearing Officer Boyce acknowledged in his Report that Porter wished to call inmate Kelly as a witness, however the Hearing Officer noted that such individual would not be called as a witness because Kelly "was the victim of the assault and [did] not want to testify."  Hearing Officer Report at p. 2.

[4] That evidence is discussed by this Court *post* at pp. 11-12.

then imposed the following sanctions on Porter:

> Disciplinary Segregation: 30 Days
> Disallow Good Conduct Time: 27 Days
> Loss of Privilege (COMM): 60 days
> Loss of Privilege (PHONE): 60 Days
> Loss of Privilege (VISIT): 60 Days

*Id.*

Porter thereafter unsuccessfully pursued administrative challenges relating to the Hearing Officer's determination. *See*, *e.g.*, Response in Opposition to Petition (Dkt. No. 6) at p. 3 (respondent discussing the administrative proceedings pursued by Porter challenging the finding of the Hearing Officer).

### B.     This Action

Porter commenced the present action pursuant to 28 U.S.C. § 2241 on August 9, 2010. *See* Dkt. No. 1 ("Petition"). In that pleading, Porter claims that his Due Process rights were violated at the subject disciplinary hearing because: i) he was not notified about inmate Kelly's inability to testify at the disciplinary hearing until after that proceeding was concluded; ii) Lieutenant C. Lewars provided false information to the hearing officer regarding statements made by Porter to the Lieutenant; and iii) inmate Kelly was not called as a witness to testify on Porter's behalf, and because "the adjudication of guilt rested on a lie." *Id.* at pp. 3-4. By this action, Porter requests that this Court restore the twenty-seven (27) days of good time credit that were forfeited by Porter as a sanction following the Hearing Officer's conclusion that Porter assaulted inmate Kelly. *Id.* at p. 4.

On December 6, 2010, the Office of the United States Attorney for the Northern District of New York, acting on respondent's behalf, filed a response in opposition to Porter's petition. *See*

Dkt. No. 6.  Along with that response, the respondent provided this Court with documents related to the administrative proceeding challenged herein, as well as the declaration completed by Hearing Officer Boyce discussed above.  *See* Attachments to Dkt. No. 6.

On December 16, 2010, Porter filed a "Traverse" in further support of his habeas application.  *See* Dkt. No. 7 ("Traverse").

This matter is currently before this Court for disposition.

## II.	DISCUSSION

### A.	Appropriate Standard of Review

"Prison disciplinary proceedings are not part of a criminal prosecution, [and thus] the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  For disciplinary proceedings to comport with the Due Process requirements of the United States Constitution, the inmate must be:  (1) afforded 24 hour advance notice of the charges contained in the incident report; (2) allowed the opportunity to appear at the related disciplinary hearing, call witnesses and present rebuttal evidence at such proceeding; and (3) provided a written statement as to the evidence relied on and reasons for the administrative decision.  *See Wolff*, 418 U.S. at 563-72; *Rodriguez v. Selsky*, No. 07-CV-0432, 2011 WL 1086001, at *7 (N.D.N.Y. Jan. 25, 2011) (Peebles, M.J.) (Report-Recommendation), *adopted*, *Rodriguez v. Selsky*, No. 07-CV-0432, 2011 WL 830639 (N.D.N.Y. Mar. 3, 2011) (Kahn, J.).

Where a disciplinary hearing was conducted in a manner consistent with the Due Process requirements of the United States Constitution, a reviewing court should uphold the outcome of the disciplinary proceeding so long as "the findings of the prison disciplinary board are supported by some evidence in the record."  *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (rejecting due

5

process challenge to disciplinary hearing which revoked good time credits because the determination of misconduct was supported by "some evidence"). "This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced ... and does not require the reviewing court to engage in examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455 (internal quotation and citation omitted). As the Second Circuit explained in *Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004), the *Hill* standard "is extremely tolerant" and is met where there is reliable evidence in the record that supports the administrative decision. *Id.* at 69 (citing *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)); *see also Vaughn v. Nichols*, No. 9:02-CV-1512, 2010 WL 681409, at *6 (N.D.N.Y. Feb. 24, 2010) (Strom, J., sitting by designation) (citations omitted).

**B.     Consideration of Petitioner's Claims**

Porter initially objects to the fact that he was not informed of inmate Kelly's refusal to testify until after the disciplinary hearing was completed. *See* Petition at p. 3; Traverse at p. 2. He asserts that had he been made aware of that fact at an earlier time, he would have "immediately moved for a postponement, sought out staff representation, and possibly called additional witnesses." Petition at p. 3. Significantly, however, Porter has not discussed, in either his Petition or Traverse, what additional evidence he would have presented in his defense to the assault charge had he been afforded an adjournment of the proceeding or the assistance of a staff member in preparing his defense to the charge.[5] Nor has he provided this Court with the names of any

---

[5] As noted *ante*, petitioner specifically indicated on the Discipline Hearing Form that he did **not** wish to have a staff representative assist him. *See* Discipline Hearing Form at p. 1.

individuals whom he may have called as additional witnesses had he been aware of inmate Kelly's refusal to testify at an earlier time, or the substance of the testimony of those potential "additional witnesses." *See* Petition; Traverse. Instead, Porter appears to request that this Court speculate that, had he been advised of inmate Kelly's unavailability at an earlier time, Porter would have: i) asked for and obtained an adjournment of the proceedings; ii) requested staff assistance to prepare Porter's defense to the charge; and iii) interviewed potential witnesses whom he may have subsequently called at the disciplinary hearing to provide unspecified, exculpatory testimony. Petitioner further invites this Court to speculate that had he engaged in the foregoing conduct, he may have obtained a favorable ruling from the Hearing Officer regarding the assault charge. Unfortunately for petitioner:

> courts cannot grant habeas relief based upon unsubstantiated conclusions, opinions or speculation. *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); *see Osinoiki v. Riley*, CV-90-2097, 1990 WL 152540, at *2-3 (E.D.N.Y. Sept. 28, 1990) (conclusory statements based on speculation "are inadequate to satisfy petitioner's burden") (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962) and *Dory v. Commissioner of Correction*, 865 F.2d 44, 45 (2d Cir.1989) (per curiam)) (other citations omitted)., No. 02-CV-0695, Dkt. No. 35 (N.D.N.Y. Dec. 7, 2005) (Hurd, D.J.); *Franza v. Stinson*, 58 F.Supp.2d 124, 154 (S.D.N.Y. 1999) (rejecting habeas claim alleging the withholding of *Brady* material as speculative, conclusory and unsupported).

*Gaffney v. Conway*, No. 9:08-CV-0302, 2009 WL 1706910, at *10 (N.D.N.Y. June 17, 2009) (Kahn, J.). Petitioner has failed to establish that his ability to prepare or present his defense to the assault charge was adversely affected by the fact that he did not receive notice of inmate Kelly's refusal to testify on Porter's behalf until the conclusion of the disciplinary hearing. Nor has he articulated, in any meaningful way, the exculpatory evidence he was purportedly prevented from

obtaining and/or presenting at the disciplinary hearing because he did not receive notice of inmate Kelly's refusal to testify until after that hearing was concluded.[6]  He is therefore not entitled to habeas relief on this theory.

Porter next argues that the Hearing Officer's determination of misconduct was wrongfully based on the fact that Lieutenant Lewars "lie[d]" when he advised the Hearing Officer that Porter admitted to being in the television room on the day of the assault.  *See* Petition at pp. 3-4.  Petitioner claims that he "has always denied being in the T.V. room even to the investigating office [sic] Lewars." *Id.* at p. 4.  However, except for Porter's own self-serving statement that Lieutenant Lewars lied when he informed Hearing Officer Boyce that Porter admitted to being in the television room on the day of the incident, *see* Petition at pp. 3-4,[7] there is no evidence which suggests – much less establishes – that the information Lieutenant Lewars provided to the Hearing Officer was untrue in any way.

The petitioner bears the burden of proving in his habeas petition that his constitutional rights were violated.  *See Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997) (citations omitted); *Rosario v. Ercole,* 582 F.Supp.2d 541, 550 (S.D.N.Y. 2008) (citation omitted).  Porter's failure to provide objective evidence which establishes his claim that Lieutenant Lewars provided the Hearing Officer with false information concerning petitioner's whereabouts on the day of the assault represents a failure on Porter to meet his burden of proof as to this aspect of his petition.

---

[6] Porter has not claimed in this action that any employee of F.C.I. Fort Dix wrongfully informed petitioner that inmate Kelly would be testifying on Porter's behalf at the disciplinary hearing.

[7] Petitioner declares that the statements made in his petition "are true and correct to the best of [his] recollection."  *See* Petition at p. 4.

*See Toland v. Walsh*, No. 04-CV-0773, 2008 WL 65583, at *14 (N.D.N.Y. Jan. 4, 2008) (Sharpe, D.J.); *Gary v. Conway*, No. 03-CV-0480, 2006 WL 3290149, at *15 (N.D.N.Y. Nov. 13, 2006) (Kahn, J.); *see, e.g.*, *Brown v. Lee*, No. 9:10–CV–0311, 2011 WL 1135940, at *10 (N.D.N.Y. Mar. 25, 2011) (Mordue, C.J.) (petitioner failed to prove existence of exculpatory evidence where sole basis for claim that such evidence existed was self-serving statement of the petitioner).

Porter also contends that the Hearing Officer wrongfully failed to call inmate Kelly as a witness at the subject disciplinary hearing. *See* Petition at pp. 3-4; Traverse at p. 1. Petitioner further claims that Hearing Officer Boyce's statement that inmate Kelly did not wish to testify on behalf of Porter is false. Specifically, Porter claims that subsequent to the disciplinary hearing, he had a discussion with inmate Kelly, who informed Porter that Kelly was "willing to be a witness on [Porter's] behalf" at the disciplinary hearing, but that Lieutenant Lewars "came by several times trying to extract statements from [Kelly] against Petitioner." Petition at ¶ 7.

In his declaration, Hearing Officer Boyce testified that inmate Kelly was interviewed prior to the disciplinary hearing and declared that he "did not want to discuss the incident and ... he was not going to talk." Boyce Decl. at ¶ 7. Although petitioner now claims that the Hearing Officer's testimony in his declaration that inmate Kelly was unwilling to testify for Porter is untrue, *see* Petition at ¶ 7, significant by its omission in the submissions filed by petitioner herein is any evidence presented by Porter which supports his assertion that inmate Kelly was, in fact, willing to provide exculpatory testimony on behalf of Porter. Specifically, there is no affidavit, letter or other document in the record signed by inmate Kelly that supports Porter's assertion regarding inmate Kelly's purported availability to testify. Porter has therefore failed to meet his burden of proving that the testimony contained in Hearing Officer Boyce's declaration concerning this issue

9

is false.

Additionally, Hearing Officer Boyce testified that, based upon his experience as a Disciplinary Hearing Officer with the Bureau of Prisons, he is aware that inmates can be intimidated into providing exculpatory testimony where the victim of an assault is asked to testify on behalf of the alleged assailant.  Boyce Decl. at ¶ 8.  The hearing officer also noted that inmates who are called to testify at a hearing may also be viewed by the inmate population as a "snitch," thereby compromising that inmate's safety.  *Id.*

The Second Circuit has observed that prison officials are given "substantial deference" in the execution of policies relating to their institutions. *See Jolly v. Coughlin*, 76 F.3d 468, 476 (2d Cir.1996).  In conjunction with the present habeas application, the administrative record supplied to this Court, together with Hearing Officer Boyce's declaration, have been reviewed.  That review has satisfied this Court that the failure of Hearing Officer Boyce to call inmate Kelly as a witness at the related disciplinary hearing was entirely justified and reasonable, and in no way suggestive of any violation of Porter's constitutional rights.  Petitioner is therefore not entitled to habeas relief on this theory.

In sum, the record establishes that Porter was afforded more than twenty-four hours notice of the charge brought against him in the Incident Report, and he was allowed the opportunity to appear at the disciplinary hearing, call witnesses and present rebuttal evidence.[8]  Additionally, Hearing Officer Boyce provided a written statement concerning his findings, which Report included specific references to the evidence upon which he relied in arriving at his determination

---

[8] For the reasons discussed more fully *ante*, Porter has not established that his Due Process or other constitutional rights were violated because the individual whom Porter requested as a witness at his disciplinary hearing was not called as a witness.

and the reasons upon which he based his finding that Porter was guilty of the assault. This Court therefore concludes that the disciplinary hearing about which Porter now complains was conducted in a manner that was entirely consistent with the Due Process requirements of the United States Constitution. *See Wolff*, 418 U.S. at 563-72; *Rodriguez*, 2011 WL 1086001, at*7. Petitioner's claims challenging the propriety of that proceeding are therefore rejected as being without substance.

Since this Court has concluded that petitioner's Due Process rights were not violated with respect to the events leading up to the disciplinary hearing, as well as the manner in which such hearing was conducted, this Court next considers whether some evidence supported the Hearing Officer's determination that Porter assaulted inmate Kelly.

In his Report, Hearing Officer Boyce noted that he considered the following evidence in arriving at his determination that Porter was guilty of the assault: i) Porter's statements in his defense to the charge; ii) the contents of the Incident Report and the related investigation; iii) photographs taken of inmates Kelly and Porter soon after the incident; iv) the medical assessment that had been performed on both of those individuals around that time; and v) a memorandum dated April 25, 2008 that was submitted to the Hearing Officer by Lieutenant Lewars. *See* Hearing Officer Report at pp. 1-2. Hearing Officer Boyce then opined that the following established Porter's guilt of the charge: i) the evidence established that Porter was in the television room of F.C.I. Fort Dix on April 12, 2008 at the time of the incident; ii) two witness who were present in the room at the time of the assault corroborated the charge that Porter had assaulted Kelly; and iii) Porter admitted to Lieutenant Lewars that Porter was in the television room on the day of the incident, although he claimed that he was not in that room at the same time as inmate Kelly. *Id.* at

pp. 2-3.[9]

Since substantial evidence in the record supported the Hearing Officer's determination that Porter was guilty of the conduct alleged in the Incident Report, his habeas claim challenging the propriety of that determination must be denied. *Hill*, 472 U.S. at 454-55; *Sira*, 380 F.3d at 69; *Vaughn*, 2010 WL 681409, at *6.

**WHEREFORE**, after having reviewed the record supplied to this Court, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that the Clerk amend the caption of this action so as to reflect the fact that the respondent herein, the Warden of F.C.I. Ray Brook, is Russell Perdue, and it is further

**ORDERED**, that Porter's habeas petition (Dkt. No. 1) is **DENIED** and **DISMISSED**, and it is further

**ORDERED**, that the Clerk of Court serve a copy of this Memorandum-Decision and Order upon the parties to this action, and it is further

**ORDERED**, that any records that were not filed in this action be returned directly to the United States Attorney at the conclusion of these proceedings (including any appeal of this Memorandum-Decision and Order filed by any party).

**IT IS SO ORDERED.**

Dated: June 6, 2011

---

[9] Hearing Officer Boyce noted that Porter's comments to Lieutenant Lewars regarding Porter's presence in the television room "contradict[ed] the statement" he had previously made regarding where he was at the time of the alleged assault. *See* Hearing Officer Report at p. 3.

*/s/ Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge